[780 NYS2d 680]

In the Matter of JAMES J. SHAPIRO, an Attorney, Respondent. GRIEVANCE COMMITTEE OF THE SEVENTH JUDICIAL DISTRICT, Petitioner.

Fourth Department, April 30, 2004

### APPEARANCES OF COUNSEL

*Daniel A. Drake, Principal Counsel, Seventh Judicial District Grievance Committee,* Rochester, for petitioner.

*Harter, Secrest & Emery LLP (Thomas G. Smith* of counsel), Rochester, for respondent.

*Bruce S. Rogow,* Ft. Lauderdale, Florida, for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law by this Court on February 15, 1983, and, prior to December 2003, maintained an office for the practice of law in Rochester. The Grievance Committee filed a petition charging respondent with violations of the disciplinary rules arising from his conduct in sending a letter to a hospitalized accident victim and in airing certain television commercials in the western New York area. Respondent filed an answer denying material allegations of the petition, and a referee was appointed to conduct a hearing. After the hearing, the Referee submitted a report, which the Grievance Committee now moves to confirm and respondent cross-moves to disaffirm.

The Referee found that a letter sent by respondent to a hospitalized accident victim was an impermissible solicitation of legal employment. The Referee found further that respondent aired television commercials that contained false and misleading statements and that a client had retained respondent based upon the false information contained in the commercials. In addition, the Referee found that, although the client believed, based upon the commercials, that respondent would personally

take action on his behalf, respondent never met the client and did not review his file or take any action on his behalf. Finally, the Referee rejected respondent's affirmative defense that the television commercials were constitutionally protected hyperbole pursuant to a prior decision of this Court.

■ We agree with the finding of the Referee that the letter sent by respondent to a hospitalized accident victim was an impermissible solicitation of legal employment in violation of Code of Professional Responsibility DR 2-103 (a) (2) (iv) (22 NYCRR 1200.8). That rule prohibits a lawyer from soliciting professional employment from a prospective client by written communication when "the lawyer knows or reasonably should know that the . . . physical, emotional or mental state of the recipient make it unlikely that the recipient will be able to exercise reasonable judgment in retaining an attorney . . ." (DR 2-103 [a] [2] [iv]).

The letter sent by respondent states, in pertinent part, "We are holding a letter containing valuable information regarding your legal rights . . . When you are well enough to exercise such judgment, please call me." We conclude that the letter, sent to a comatose patient in the intensive care unit of a hospital three days after her automobile collided with a train, was a solicitation of legal employment sent at a time when respondent, who acknowledged that he had read newspaper articles reporting the accident and the condition of the victim, knew or reasonably should have known that the recipient was unable to exercise reasonable judgment in retaining counsel. Despite language in the letter acknowledging the likelihood that the recipient was then unable to exercise reasonable judgment in retaining counsel, we are not persuaded by the explanation of respondent that he sent his letter to a stranger under these circumstances in order to educate her regarding her legal rights.

In the alternative, respondent contends that DR 2-103 (a) (2) (iv) is overly broad and vague and therefore unconstitutional. We reject that contention.

A state has a compelling interest in and broad power to regulate the practice of law (*see Goldfarb v Virginia State Bar*, 421 US 773, 792 [1975], *reh denied* 423 US 886 [1975]; *Matter of von Wiegen*, 63 NY2d 163, 170-171 [1984]). Although lawyer advertising is commercial speech and is accorded the protection of the First Amendment (*see Florida Bar v Went for It, Inc.*, 515 US 618, 623 [1995]; *Shapero v Kentucky Bar Assn.*, 486 US 466, 472 [1988]; *Bates v State Bar of Ariz.*, 433 US 350 [1977], *reh*

*denied* 434 US 881 [1977]), it is now familiar law that commercial speech may be regulated to advance a substantial interest provided that the regulation goes no further than necessary to advance that interest (*see Went for It, Inc.*, 515 US at 625-635; *Central Hudson Gas & Elec. Corp. v Public Serv. Commn.*, 447 US 557, 566 [1980]; *von Wiegen*, 63 NY2d at 173-175).

■ Contrary to respondent's contention, the disciplinary rule at issue is not overbroad. The substantial interests of a state in protecting the privacy of vulnerable prospective clients and in preventing the erosion of confidence in the legal profession have been recognized (*see Went for It, Inc.*, 515 US at 635; *Matter of Anis*, 126 NJ 448, 457, 599 A2d 1265, 1269 [1992], *cert denied sub nom. Anis v New Jersey Comm. on Attorney Adv.*, 504 US 956 [1992]) and DR 2-103 (a) (2) (iv) prohibits lawyers from soliciting prospective clients at a time when the clients are unable to exercise reasonable judgment with regard to the retention of counsel. The disciplinary rule does not impose an absolute bar on contact by lawyers with prospective clients for a specified period (*cf. Went for It, Inc.*, 515 US at 620-621), nor does it proscribe a particular type of solicitation (*cf. Matter of Koffler*, 51 NY2d 140 [1980], *cert denied* 450 US 1026 [1981]) or solicitations directed to a particular group (*cf. von Wiegen*, 63 NY2d at 168-170). Instead, the disciplinary rule strikes a balance between the interests of vulnerable prospective clients in being free from unwanted intrusions at a time when they are unable to exercise reasonable judgment and the interests of prospective clients in receiving information regarding available legal services and of lawyers in advertising their services. Consequently, it cannot be said that the rule is overbroad.

Nor do we find the disciplinary rule to be unconstitutionally vague. The Supreme Court of New Jersey, in upholding a nearly identical rule, concluded that, in the days immediately following the tragic Lockerbie crash, any reasonable lawyer would have known that the families of the victims would be weak and vulnerable, and that "any reasonable lawyer would conclude that an obsequious letter of solicitation delivered the day after a death notice would reach people when they 'could not exercise reasonable judgment in employing a lawyer' " (*Anis*, 126 NJ at 458, 599 A2d at 1270).

We reach a similar conclusion here. Applying the standard articulated by the court in *Anis*, we conclude that any reasonable attorney would know that a solicitation letter sent to a hospitalized comatose patient in the days immediately following

a collision between her automobile and a train would reach the patient and her family at a time when they were unable to exercise reasonable judgment in retaining an attorney. Respondent, who had actual knowledge of the condition of the accident victim, will not be heard to argue that the disciplinary rule required him to be a "mind and body reader" in order to determine whether his solicitation letter could be sent.

We also agree with the finding of the Referee that the television commercials aired by respondent contained false and misleading statements. The commercials depicted respondent as an experienced, aggressive personal injury lawyer who was prepared to take and had taken personal action on behalf of clients. The evidence presented at the hearing, however, supports the finding of the Referee that respondent has not been actively engaged in the practice of law in this state since 1995. Respondent has conceded that he has continuously resided in the State of Florida since 1991. The daily operations of the Rochester firm of Shapiro and Shapiro have been entrusted to one or two attorneys and several paralegals. Respondent's role has been limited to acting as spokesperson, providing funding and responding to questions. In contrast to the image of respondent depicted in the commercials, respondent has never tried a case to its conclusion and has conducted approximately 10 depositions.

The record also supports the finding of the Referee that a severely injured accident victim retained respondent based upon those commercials, which grossly exaggerated and falsely depicted his skill and experience and failed to inform viewers that he does not reside in New York and has not engaged in the practice of law here since 1995. Respondent took no personal action on behalf of that client and did not even review his file.

We reject the contention of respondent that his television commercials consist of constitutionally protected hyperbole. The statements in the television commercials aired by respondent are false; they do not consist of hyperbole. In the commercials, respondent, or an actor speaking on his behalf, makes statements regarding actions that respondent has taken or will take on behalf of clients when, in fact, respondent has not practiced law in a number of years and intended to take no action on behalf of any client. The Constitution does not protect the dissemination of false or misleading information (*see Zauderer v Office of Disciplinary Counsel of Supreme Ct. of Ohio*, 471 US 626, 637 [1985]; *Central Hudson Gas & Elec. Corp.*, 447 US at

563-564; *Matter of Zang*, 154 Ariz 134, 141, 741 P2d 267, 274 [1987], *cert denied sub nom. Whitmer v State Bar of Ariz.*, 484 US 1067 [1988]). In our view, the depiction of respondent in the commercials as a tough, aggressive advocate who has recovered and will recover all that clients are entitled to recover was "flattering past the point of deception" (*Zang*, 154 Ariz at 145, 741 P2d at 278).

We therefore confirm the findings of fact made by the Referee and conclude that respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4])—engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7])—engaging in conduct that adversely reflects on his fitness as a lawyer;

DR 2-101 (a) (22 NYCRR 1200.6 [a])—disseminating a public communication to a prospective client containing statements or claims that are false, deceptive or misleading; and

DR 2-103 (a) (2) (iv) (22 NYCRR 1200.8 [a] [2] [iv])—soliciting professional employment from a prospective client by written communication when he knew or reasonably should have known that the age or the physical, emotional or mental state of the recipient made it unlikely that the recipient would be able to exercise reasonable judgment in retaining an attorney.

We have considered, in determining an appropriate sanction, the mitigating factors found by the Referee, i.e., that respondent consulted counsel concerning the language in his solicitation letters and that he retained outside counsel to assist with some of the cases handled by his firm. Respondent, however, was previously censured by this Court for a misleading advertisement placed in the yellow pages of the telephone directory (*Matter of Shapiro*, 225 AD2d 215 [1996]). Additionally, on two prior occasions, respondent received letters of caution for sending letters to clients containing misleading language regarding legal costs. Finally, respondent has received a letter of caution for sending a solicitation letter to a hospitalized accident victim. Accordingly, after consideration of all of the factors in this matter, we conclude that respondent should be suspended for one year and until further order of the Court.

PIGOTT, JR., P.J., GREEN, HURLBUTT, KEHOE and HAYES, JJ., concur.

Order of suspension entered.